Randy OLSEN, by and through his guardian ad litem, Gaylen R. Olsen, Plaintiff and Appellant,

v.

The STATE of Utah, By and Through its INDUSTRIAL COMMISSION, et al., Defendants and Respondents.

The STATE of Utah, By and Through its INDUSTRIAL COMMISSION, and the State of Utah, by and through its Road Commission, Third-Party Plaintiffs,

v.

COX CONSTRUCTION COMPANY, INC.,[*] Third-Party Defendant.

No. 13867.

Supreme Court of Utah.

July 18, 1975.

---

Richard C. Dibblee of Rawlings, Roberts & Black, Salt Lake City, for plaintiff and appellant.

Vernon V. Romney, Atty. Gen., Merlin Lybbert, Sp. Asst. Atty. Gen., Salt Lake City, for the State.

Jay E. Jensen, Salt Lake City, for Flowell Elec. Ass'n.

Rex J. Hanson, Salt Lake City, for Cox Const. Co.

HENRIOD, Chief Justice:

Appeal from two summary judgments of no cause of action, one entered by District Judge G. Hal Taylor in favor of defendant Flowell, and one subsequently entered by District Judge Maurice Harding, in favor of defendant State of Utah. Each judgment is affirmed.

The basic issues on appeal: That each defendant had violated a duty of care which, under facts adduced under the discovery process, presented a factual situation triable to a jury and invulnerable to a judgment as a matter of law. The undisputed facts fairly may be briefed as follows:

The plaintiff, a young man employee of the Cox Construction Company (owned by Brent Cox), that was laying concrete on a highway under contract with the State of Utah, seriously was injured when a crane attached to a piece of cement moving equipment brushed against a high voltage transmission line owned and used by defendant Flowell, an electric power company. The result was a double amputation, —(a fact emotionally quite unrewarding to us and obviously undercompensated when, under workmen's compensation, but not otherwise under the facts here, we are compelled to affirm the trial court).

Cox planned to pour the concrete on an overpass over which the transmission line traveled, by use of a concrete pump. If such procedure could not have been employed for any reason, a crane and shovel necessarily would have to be used, which would present a possible hazard by contact with the wire. Cox and one Robertson, spokesman for Flowell, agreed that should there be such an eventuality, Cox *would contact Robertson,* who, upon request, would shut off the power and eliminate the danger. It became necessary to use the crane, and Cox sought out Robertson at the latter's office in a nearby town about 15 miles away. He did not find him there, or on the streets, but, although knowing that both Robinson's office and home phones were listed in the local directory, he did not call either at any time, but returned to the job, ordered the use of the crane, knowing the vulnerability of the voltage,—and, what is particularly sad in this case,—the contact by the crane with the live wire occurred on the very last bucket of cement to be poured, sending about 14,000 volts of electricity into the body of this unfortunate young man, who as unfortunately was not wearing rubber footwear.

The plaintiff has been compensated under the Workmen's Compensation law,[1]

---

cable to the evidentiary and undisputed facts here.

which defendants urge is plaintiff's exclusive remedy,—and which assertion under the circumstances of this case, makes subscription by us to such urgence inescapable.

Plaintiff cites authorities reflecting the high duty of care laid at the doorstep of electric power companies,—with which concept we agree,—but they do not impose absolute liability in a case like this, as seems to be suggested by plaintiff,—nor do they impale Flowell on the horns of an impossible dilemma looking to any extra sensory perception to the effect that Cox, having agreed to request the cutting off of the current, as a condition precedent of using an unorthodox method of construction, would not perform that condition. Nor do such authorities say that Flowell must be a medium that can predict and prevent any negligence on the part of Cox, or that Flowell must station an agent at every point where a private contractor or a state agency presumes to conduct some project that may prove dangerous in an area where a certificated electric company is not only attending to its own business, but where there is no evidence it has violated anything.

Plaintiff further urges that the State, through its Industrial and Road Commissions, should have had representatives at the jobsite to prevent an accident like this. It *did* have representatives there, who, according to the undenied evidence, reasonably conducted themselves in an effort to prevent injuries. The citation of statutes and cases pointing up certain safety standards the State must meet,[2] simply do not require the State to have done other than it did to meet the exigencies of the facts here, or to employ untold thousands to police every conceivable project whatever.

It seems that irrespective of the perennial debate anent the inadequacy of statutory workmen's compensation benefits, this case falls within existing provisions thereof, under which, concededly compensation already has been afforded.

ELLETT, CROCKETT, TUCKETT and MAUGHAN, JJ., concur.

---

2. Sec. 61–2, Utah Industrial Comm. regulations, Sec. 35–1–16(1), Utah Code Annotated 1953, as amended, cited by appellant.